THE BANK OF BERGEN COUNTY, DEFENDANT IN ERROR, v. THE BOARD OF EDUCATION OF THE BOROUGH OF RUTHERFORD, IN THE COUNTY OF BERGEN, PLAINTIFF IN ERROR.

Submitted March 18, 1913—Decided June 18, 1913.

1. A bank agreed in writing to purchase school bonds to be issued and to pay for them "on or about the time of the signing of the contracts for the construction of a school building about to be erected on W. street, on the site known as the K. site." Said site was that authorized and described in the preliminary proceedings and special election required by law, which had been approved by the attorney-general as complying with the statutory requirements. Subsequently the site was abandoned, an-

other chosen, and bonds issued based on a second election describing such new site. It did not appear that these later proceedings were approved by the attorney-general. *Held,* that the bonds issued under such latter proceedings were not a compliance with the contract.

2. After the second election, but before a delivery or tender of the new bonds, the bank complained of the delay in delivering "the bonds bid for by it," and requested an early delivery. *Held,* that no waiver of the requirements of the contract was made out as a court question.

On error to the Supreme Court.

For the plaintiff in error, *Luther Shafer.*

For the defendant in error, *Gilbert Collins* (*Guy L. Fake* on the brief).

The opinion of the court was delivered by

PARKER, J. The trial was before a circuit judge, sitting without jury, who awarded judgment in favor of the plaintiff below. The only assignments of error relied on are the refusal of the court to nonsuit at the close of plaintiff's case, and again at the close of the whole case; that there was no evidence to support the judgment; and the general assignment that judgment was for the plaintiff when it should have been for the defendant. Manifestly, the judgment should not be reversed unless there was no evidence giving legal support to the plaintiff's claim.

The suit was to recover a balance of moneys loaned, and the balance claimed arose in this way: The defendant board of education intending to buy land and erect thereon a new school house, went through the legal formalities necessary for an issue of its bonds to pay for the land and building, amounting on their face to $86,300; and the plaintiff bank agreed to take the whole issue at a specified rate yielding a slight premium, the delivery and payment to be made "on or about the time of the signing of the contracts for the construction of a school building about to be erected on Wood street, on the site known as the Kip site." Of the agreed

amount the bank made an advance loan of $12,000 to be repaid out of the proceeds of the bonds. After these transactions the board changed its mind about the Kip site and abandoned it; there ensued what purported to be a popular election in the borough of Rutherford to approve the selection and purchase of another site; the bonds when finally issued were based on that new site, and when tendered to the bank it refused to take them as not being what it had bargained for. The board, after notice to the bank, sold them elsewhere for about $1,946 less than the bank had agreed to pay for the bonds based on the Kip site, and paid all of the temporary loan but this $1,946, for which this suit was brought. The defence was substantially a counter-claim of the same amount by way of damages for loss on the resale. There are only two possible questions in the case—*first,* whether the bonds offered were a compliance with the contract, which is mainly a question of law; and *secondly,* if not, whether the bank by waiver or estoppel had lost its right to reject them, which is substantially a question of fact. The first question must be answered in the negative. The original proceedings of the board and the original authority given to it by the voters were based on the proposed purchase of the Kip site. This was known to both plaintiff and defendant at the time the contract of the bank was made, and the reference to it in that contract shows that the site was a material feature of the bargain. Strictly, the time for taking and paying for the bonds cannot arrive unless and until the Kip site is purchased and contracts for building a school house thereon are signed. But there is a far more serious difficulty. The statute requires proceedings of this character to be approved as to legality by the attorney-general. *Comp. Stat., p.* 4758, § 99. The proceedings first taken, based on the Kip site, were so approved; those based on the new site were not; at least, it does not appear that they were. Questions of this sort may well affect materially the marketability of such bonds, and lead to troublesome litigation with respect to them. The bank was under no obligation primarily to purchase a law-

suit or a doubtful security different from that described in its contract.

As to waiver, the judge evidently found that there was none, and that finding is justified by the evidence. The only evidence looking in that direction is that in June, 1910, after the second election to authorize a school on the new site, the bank complained orally and by letter of the delay in delivery and said it had been 'understood that delivery was to be by April 1st, a date two months prior to the second election. This letter does not allude to a change of site, but simply calls for "the school bonds bid for by the Bergen County Bank." About a month later, when the bonds were still undelivered, the bank intimated that it would not take them, and when they were tendered on August 1st they were refused.

It cannot be said that this conclusively establishes a waiver, if indeed it is any evidence at all. Assuming that the complaint in June referred to the new bonds, there is no consideration for a change in the contract, and no estoppel appears to have arisen out of any change in defendant's position. If the bonds had been then tendered and accepted, a different question would arise; but the trial judge quite properly failed to find sufficient proof of waiver. His finding of fact, supported by any evidence, is conclusive.

On that state of facts the defendant's counter-claim was properly disregarded, and the judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TERHUNE, HEPPENHEIMER, JJ. 15.

*For reversal*—None.